```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARIE AND FRED WASIELEWSKI,<br><br>             Plaintiffs,<br><br>    v.<br><br>SANDS HOTEL AND CASINO,<br><br>             Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 04-2667(JEI)<br><br>**OPINION** |

**APPEARANCES:**
LAW OFFICE OF LISA A. WELKEY
BY: Lisa A. Welkey
Penn Park Building
48 South Main Street, Suite 500
Pittston, PA 18640
         Counsel for Plaintiffs

NAULTY, SCARICAMAZZA & MCDEVITT
BY: Francis T. McDevitt
4001 E. Lincoln Drive West
Marlton, NJ 08053
         Counsel for Defendant

**IRENAS**, Senior District Judge:

   Plaintiffs Marie Wasielewski and her husband, Fred Wasielewski, filed suit against the Sands Hotel and Casino (the "Sands") on March 9, 2002, in federal court pursuant to 28 U.S.C. § 1332, diversity jurisdiction.  They allege Mrs. Wasielewski fell and injured herself while they were on premises of the Sands as business invitees.  Mrs. Wasielewski claims that she has suffered economic damages, along with physical and mental pain,

1

discomfort and inconvenience.  Mr. Wasielewski asserts claims of loss of society, care, comfort and companionship of his wife.

Defendant moved for summary judgement, arguing that there are no issues of triable fact regarding the Sands' alleged negligence.  It contends that Plaintiffs cannot show that the Sands, as the possessor of the land, deviated from its duty of reasonable care, or that if there was a deviation, that such deviation was the cause of Mrs. Wasielewski's accident. Defendant further contends that the Sands did not know, and could not have reasonably known of the existence of any harmful conditions in the area where Mrs. Wasielewski fell.  Plaintiffs have not raised material issues of fact or law as to potential negligence on the part of the Sands, and so summary judgement will be granted.

I.

The test for summary judgement is stated in Rule 56 of the Federal Rules.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but. . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citation omitted).

## II.

On March 9, 2002, Mr. and Mrs. Wasielewski went to the Atlantic City to gamble. They arrived around 2:00pm and played for a few hours at the Sands. (M. Wasielewski Dep., at p. 31.) They ate before they arrived in Atlantic City, and again around 5:00 at a restaurant in the Sands. (M. Wasielewski Dep., at pp. 31-33.) They took a break from gambling in the evening and walked on the boardwalk, where they ate again. (M. Wasielewski Dep., at pp. 34-35.) Mrs. Wasielewski is a diabetic, and takes medication for her diabetes. (M. Wasielewski Dep., at p. 59.)

After gambling for some time, Mrs. Wasielewski depleted her funds, so she and Mr. Wasielewski went to their car to obtain additional money. (M. Wasielewski Dep., at pp. 31, 34-35.) They had parked in a Sands private parking lot, which according to Mrs. Wasielewski was a street away from the Sands (although she could not testify exactly where it was in relation to the Sands, or other landmarks). (M. Wasielewski Dep., at p. 35-40.)

They began walking back towards the Sands sometime before 7:00pm. Mrs. Wasielewski and her husband crossed a street, and stepped over a curb onto a "sidewalk" on the Sands property.[1] They walked three to four feet, with Mr. Wasielewski on Mrs. Wasielewski's left side. (M. Wasielewski Dep., at pp. 44, 52.) Mrs. Wasielewski "suddenly and without warning felt her feet slip from under her." (Pl. Brief, at p. 1.) There were other people in the area when she fell, and at least one person offered to help her stand up. (M. Wasielewski Dep., at p. 48.)

At her deposition, Mrs. Wasielewski could not say whether

---

[1] Both parties refer to the area in which Mrs. Wasielewski fell as a "sidewalk." The area was not the boardwalk. (M. Wasielewski Dep., at p. 40.) It was a pedestrian area, which led to an entrance of the Sands. (Pl. Brief, at p. 1.) Mrs. Wasielewski had difficulty recalling the exact location of the entrance, relative to the streets and landmarks. (M. Wasielewski Dep., at p. 37.) The entrance was later identified in the incident report by the EMT on call, Stephen Smith, as the Poployde and Indiana Avenues entrance. (Smith Dep., at p. 30.)

The pictures reviewed by Mrs. Wasielewski during her deposition identified the area where she fell. She indicated during her deposition that a street vendor was on one side of her and a stone pillar was on the other as she walked towards the entrance. The entrance was directly in front of where she fell. (M. Wasielewski Dep., at p. 48.) Indeed, the entrance was very close, and can be seen in the photographs of the exact location of her fall. (M. Wasielewski Dep., at p. 54.)

The photographs also show that the sidewalk design was made up of large "squares." (Smith Dep., at p.31.) According to a comment made by counsel for the Sands during the depositions, an earlier deposition of the properties services manager indicated that the "squares" were rough cut granite. (Smith Dep., at p. 31.)

the sidewalk was made of a concrete or stone material, but did recall that it appeared "glittery." (M. Wasielewski Dep., at p. 46.) She had walked passed the area in which she fell on her way to the car, and noticed that there was a push cart food stand in the vicinity. (M. Wasielewski Dep., at p. 46-47; 50-51.) She testified that the sidewalk area looked the same each time she walked through it, to and from the garage.

After she fell, Mrs. Wasielewski commented to her husband that there may have been something on the ground, perhaps from the push cart vendor. (M. Wasielewski Dep., at p. 50.) She did not, however, see anything on the ground that caused her to fall, nor did she notice anything on her clothes or shoes that could have caused the fall. (M. Wasielewski Dep., at p. 50.) There is no mention in her deposition testimony of a puddle or any type of moisture on the ground in the area where she fell. She also stated that she had never seen any construction in that area, damage to the sidewalk, or any holes or breaks in that area. (M. Wasielewski Dep., at p.45.) In addition, Mrs. Wasielewski testified that other people in the area, to her knowledge, did not point out anything that could have been the cause of the fall. (M. Wasielewski Dep., at p. 50.) When asked if there were streak marks on the sidewalk, Mrs. Wasielewski testified that she did not look for any, as she was focused on her injuries.

5

Mr. Wasielewski's deposition testimony corroborates Mrs. Wasielewski's description of how she fell: "I remember I was walking along side of her, we were talking, and I look at her, and the next thing I look and she wasn't there, just like that. Quick as a flash of an eye she was gone, and then I heard her holler. . . . Then there was people come running towards me, and they were running towards her. . .And she was just moaning and groaning.  I knew she was really hurt."  (F. Wasielewski Dep., at p. 7.)  He could not pinpoint anything in the area that might have caused her fall.

Mrs. Wasielewski and her husband testified that it was drizzling when they left the Sands to go to the car for additional money.  (M. Wasielewski Dep., at p. 46; F. Wasielewski Dep., at p.8.)  Mrs. Wasielewski stated that the weather had been "nice" when she and her husband went for a walk on the boardwalk earlier in the day, but could not say whether or not it had rained during the day, as they had been inside most of the day.

At the time of her fall, Mrs. Wasielewski was wearing flat shoes, the kind that she always wears.  (M. Wasielewski Dep., at p. 46.)  She was wearing slacks.  (M. Wasielewski Dep., at p. 52.)

After Mrs. Wasielewski was able to stand up, she and her husband walked back to their car.  They tried to exit the parking lot, but were unable to because they did not have any small bills

6

to pay the rate.  They explained to the parking lot attendant what had happened, and the parking lot attendant advised them that they needed to speak with a representative from the Sands. (M. Wasielewski Dep., at pp. 38-39.)

The parking lot attendant then walked the Plaintiffs back to the Sands; they walked passed the location where Mrs. Wasielewski fell.  It was not raining at that time and Mrs. Wasielewski testified that she did not see anything in the area that could have caused her fall.

The Plaintiffs were brought into a room at the Sands where an EMT, who has since been identified as Stephen Smith ("Smith"), was stationed.  Smith prepared an incident report, which included taking Mrs. Wasielewski's medical history and hearing her version of what had happened.  (Smith Dep., at p. 23.) The report indicated that Mrs. Wasielewski was a diabetic, who took medication for her condition, and that she wore bifocals.  (Smith Dep., at p. 27.)  Mrs. Wasielewski recalled telling Smith that she thought the sidewalk was slippery.  (M. Wasielewski Dep., at p. 59.)

Smith, along with his assistant, led Plaintiffs outside and they identified the area where Mrs. Wasielewski fell. (Smith Dep., at p. 18.)  Mrs. Wasielewski testified that she did not see anyone cleaning the area.  (M. Wasielewski Dep., at p. 60.) In addition, she testified that the area had been "misty," but did

not look wet when she returned with Smith.  (M. Wasielewski Dep., at p. 61.)  Smith and his assistant took pictures of the area, including the spot where Mrs. Wasielewski said that she had fallen.  (Smith Dep., at pp. 32, 40.)  Smith noted that there was lighting from an overhang above the entrance doors. (Smith Dep., at pp. 32-33.)

Smith testified that upon examining the area, he did not see any condition that would warrant calling the plant operations department or another official at the Sands.  (Smith Dep., at p. 26.)  Mrs. Wasielewski recalled at her deposition that Smith "kicked" the sidewalk at the point where she indicated that she fell, and commented that it did not feel slippery.  (M. Wasielewski Dep., at p. 59.)  It was Smith's understanding that if he observed debris, water or other problem with the floor, or any area of the Sands, he was to contact a supervisor.  (Smith Dep., at p. 26.)

### III.

Under New Jersey law, commercial landowners are responsible for maintaining the sidewalks abutting their property in reasonably good condition.  *Stewart v. 104 Wallace Street, Inc.*, 87 N.J. 146 (1981).  Commercial landowners must also exercise reasonable care for an invitee's safety.  Under its duty to invitees, the commercial landowner must correct or warn of any

known defects or defects that through the exercise of reasonable care, it should have known.  *See Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426 (1993).  An owner owes a higher degree of care to a business invitee than to licensees or trespassers, "because that person has been invited on the premises for purposes of the owner that often are commercial or business related."  *Id*. at 433.  The owner is obligated, with regard to a business invitee or guest, "to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered."  *Id*. at 434.  This duty includes the duty to conduct reasonable inspections to discover latent dangerous conditions.  *Id*.

Plaintiffs carry the burden of proof at trial to show that the Sands owed a duty to the Plaintiffs, that the Sands breached that duty, and that the breach was the proximate cause of the damages incurred.  *Anderson v. Sammy Redd & Assoc.*, 282 N.J. Super. 50 (App. Div. 1994).

## IV.

The parties appear to be in agreement that the Sands owed Plaintiffs, who were lawfully on the premises as business guests, a duty of care.  The issues raised in this summary judgement motion go to whether there was a breach of that duty, and whether the alleged breach was the proximate cause of Plaintiffs' injuries.

Plaintiffs have not raised any triable issues. Mere allegations that a defect existed will not defeat a properly pleaded summary judgement motion. Plaintiffs have offered no testimony that there was any substance in the area that would cause the sidewalk to be slick or slippery. Mrs. Wasielewski's comment that it was "misty" is insufficient to show that the ground was wet, or that the moisture created a defect or dangerous condition. Even accepting Plaintiffs' assertion that the air was misty, there is no testimony suggesting that Mrs. Wasielewski's clothes became damp after falling on the ground or any indication that water on the ground could have caused her fall.

Mrs. Wasielewski further testified that she did not notice anything on her shoes or clothes that would make the ground slick on contact. Even when Plaintiffs returned to the site and conducted further investigation, there were no signs of streak marks, grease stains, uneven pavement or the like.

Smith's deposition testimony demonstrates that he too found no defects or dangerous conditions to report to the operations department. There is evidence that multiple people were in the area and there were no reports of a defect. Thus, Plaintiffs have not shown that there was anything in the area that could remotely constitute a defect.

Furthermore, Plaintiffs have not provided the Court with any evidence that would suggest the sidewalk area was composed of a material that was inherently dangerous.  Mrs. Wasielewski testified that the ground appeared "glittery," which does not equate to slippery.  There is no evidence that other people stumbled or fell in that area.  The fact that Mrs. Wasielewski fell one time, after walking through the same area at least three times that day, is not evidence that the sidewalk material is one that is inherently slippery or even one that tends to become slippery in misty conditions.

Ultimately, Plaintiffs have not provided the Court with an explanation as to why Mrs. Wasielewski fell.  Plaintiffs have only provided their self-serving testimony that she fell and mere speculation as to what caused her fall, i.e. the misty weather, or something from the nearby food cart.  We cannot conclude based on the result, a fall, that the cause was a defect in the sidewalk.

Even if Plaintiffs could raise a material issue of fact as to the cause of her fall, she would still need to show some type of breach of duty on the part of the casino.  The Plaintiffs have not put forth any evidence that would even imply that the Sands failed to conduct reasonable inspections to discover latent dangerous conditions.  Indeed, they have not suggested what the Sands failed to do in maintaining its premises, nor have they

suggested a course of action that could have prevented Mrs. Wasielewski's fall.

V.

For the reasons set forth above, the Court will grant Defendant's motion for summary judgement.  The Court will issue an appropriate Order.

Date:   5/10/05

                                              s/Joseph E. Irenas
                                              Joseph E. Irenas, S.U.S.D.J.